NEMER v. STATE BOARD OF REGISTRATION FOR
ARCHITECTS, PROFESSIONAL ENGINEERS
AND LAND SURVEYORS.

DECISION OF THE COURT.

1. LICENSES — ARCHITECT — MANDAMUS — SUPERINTENDING CON-
TROL — DESIGN.

Applicant for registration as an architect *held*, not entitled to
writ of mandamus or superintending control to compel board
of registration for architects, professional engineers, and land
surveyors to issue certificate of qualification, where he had
failed to pass examination in design.

SEPARATE OPINION.

FITZGERALD, J.

2. LICENSES—REGISTRATION OF ARCHITECTS—EXAMINATION IN DE-
SIGN.

*Allegation that defendant board of registration of architects
had acted arbitrarily and improperly in denying plaintiff reg-
istration for failure to pass examination in design held, not
supported by reason of failing score by each of the 7-member
panel scoring such examination.*

3. SAME—ARCHITECTS—SCOPE OF EXAMINATION.

*The board of registration for architects, professional engineers,
and land surveyors is vested with the duty of prescribing the
scope of the examinations open to applicants entering the
profession of architecture (CL 1948, § 338.551 et seq., as
amended).*

4. SAME — ARCHITECTS — EXAMINATION — DESIGN PROBLEM — DIS-
CRETION OF OFFICERS.

*Design problem, as presented to applicants for examination as
architects, held, not to have been an obvious abuse of discretion
by the board of registration for architects, professional en-
gineers, and land surveyors, charged with duty of effectuating
purpose of legislation pertaining to regulation of the profes-*

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6, 8, 10, 11] 5 Am Jur 2d, Architects § 2 et seq.
[5] 1 Am Jur 2d, Administrative Law § 92 et seq.
[7] 1 and 2 Am Jur 2d, Administrative Law §§ 21, 622 et seq.
[9] 5 Am Jur 2d, Appeal and Error § 1009.

sion of architecture, where it is impossible for the Court of Appeals to say that the problem was incapable of proper interpretation or of proper grading by the board (CL 1948, § 338.551 et seq., as amended).

5. Administrative Law and Procedure—Rules and Regulations—Discretion of Officers—Courts.

Courts will not interfere with the right of an administrative agency to adopt rules and regulations to effectuate the purposes of the legislation creating it unless there is an obvious abuse of discretion.

6. Licenses—Examination—Courts.

A court may not sit as a superexamining board and order an examinee certified as entitled to a license when in the judgment of the certifying board his performance does not merit the standard of the profession.

7. Constitutional Law — Quo Warranto — Mandamus — Superintending Control.

The matter of constitutionality of the right of the board of registration for architects, professional engineers, and land surveyors to perform its functions would be by way of quo warranto, not mandamus or superintending control (GCR 1963, 715).

8. Licenses — Certificates — Architects — Examination — Design — Courts.

Complaint for writ of mandamus or superintending control sought by plaintiff to secure his certification as an architect is ordered dismissed, where the board of registration for architects, professional engineers, and land surveyors is not shown to have abused its discretion in denying certification by reason of plaintiff's failure to obtain a passing grade in an examination in design, since no court may sit as a superexamining board (CL 1948, § 338.551 et seq., as amended).

9. Costs—Public Question—Certification as Architect.

No costs are allowed in proceeding to obtain certification as an architect, a public question being involved (CL 1948, § 338-.551 et seq., as amended).

SEPARATE OPINION.

J. H. GILLIS, J.

10. Licenses — Architects — Examination — Courts — Review.

A court cannot sit as a superexamining board and order an examinee certified as entitled to a license as an architect even

*though defendant board of registration for architects, professional engineers, and land surveyors has failed to establish adequate standards, has delegated its function of grading examinations to unauthorized personnel, has not made an independent determination on the question of whether the applicant had scored a passing grade, has not advised the applicant why he did not obtain a passing grade on the examination in design, and has refused to provide any method of review for an unsuccessful applicant whose papers are now lost.*

11. SAME—ARCHITECTS—EXAMINATION—REVIEW.

*Claim that an applicant for license as an architect had a method of review of failure to pass an examination by repeating the biannual examination held, without merit (CL 1948, § 338.551 et seq., as amended).*

Original action in Court of Appeals. Submitted Division 2 February 10, 1966, at Detroit. (Docket No. 1,201.) Decided December 8, 1966. Leave to appeal denied by Supreme Court February 16, 1967. See 378 Mich 751.

Action by Basil Bernard Nemer against the Michigan State Board of Registration for Architects, Professional Engineers and Land Surveyors, for mandamus or superintending control to compel defendant board to issue a certificate as licensed architect to plaintiff. Complaint dismissed.

*J. Leonard Hyman* and *Hanley M. Gurwin,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Francis W. Edwards,* Assistant Attorneys General, for defendant.

FITZGERALD, J. The late Judge WATTS heard the oral arguments in this case but did not participate in the preparation of this opinion.

Plaintiff in this action for mandamus or superintending control, Basil Bernard Nemer, graduated from the University of Michigan School of Architecture and Design in June, 1956, and applied to defendant board for permission to take appropriate examinations required as a prerequisite to certification as an architect in the State of Michigan. Plaintiff took part 1, the structural design section of the examination and, following a four-year apprenticeship, made application for permission to take the remaining six parts of the written architectural examination in June, 1963.

In November, 1963, plaintiff was advised that he had passed portions of the examination involving mechanical equipment; composition; specifications; supervision; counseling and administration; history; but that he had not passed the design problem. Passing grade on all parts of the examination was 75% and plaintiff received 51% on the design problem.

Following conferences with defendant board, plaintiff was advised that the examination was scored by persons other than members of the board and that the board members were unable to advise in what manner and for what reason the design problem submitted by plaintiff was unsatisfactory.

That it was unsatisfactory to the scorers is indicated by the following advisory scores submitted by each individual member of the scoring panel, as furnished by defendant:

> "Bruno Leon ................. 45
> James W. Conn .............. 66
> Paul B. Moffett ............. 54
> Thomas H. Hewlett ......... 48
> William E. Kapp ........... 15
> A. Arnold Agree ........... 60
> Philip Brezner ............. 68" .

Plaintiff claims that the design problem is not capable of objective scoring and as such is not a proper or reasonable test for purposes of certification. He maintains that if the design problem were scored according to the same objective standards as used in other parts of the examination, he would have received a passing grade. The detriment ascribed by him is that he is prevented from obtaining a position of independence within his chosen profession resulting in an unwarranted loss of income. He states that the action is arbitrary, unreasonable, and unrealistic when viewed in light of the intent of the statute and prevents qualified persons from carrying on in their chosen profession.

In seeking the aid of this Court, plaintiff asks that defendant be ordered to issue a certificate to plaintiff qualifying him to hold himself out to the general public as an architect and such other relief as this Court shall grant.

Plaintiff alleges that the design problem is unfairly graded with the result that the majority of those applicants who take it are given a failing score, stating upon his information that in the year in which he took the examination only 28 out of 140 applicants passed.

Defendant alleges that plaintiff, after being informed in November, 1963, that he had passed all but the design problem, filed an application on April 2, 1964, to be permitted to be re-examined on this portion of the examination at a forthcoming session to be held in May, 1964. They further allege that, notwithstanding his application and eligibility for a repeat examination at that time, plaintiff failed to attend and participate in the examination held on that date.

The day following this examination, defendant received a letter from plaintiff's attorney requesting

that he have an opportunity to appear with plaintiff before the board and review the problems which the plaintiff had failed at the previous examination. Such a meeting was held in July, 1964, between the three members of the board who are registered architects, the plaintiff, and his attorney, and, defendant alleges, resulted in a review, discussion, and consideration of the answer to the problem. The result was a unanimous opinion of the board members present that the paper submitted by plaintiff had been properly graded and scored.

The defendant further alleges that in April, 1965, plaintiff was sent notice of another examination to be held in May, 1965, and advised him of his eligibility to participate in said examination, and that plaintiff did not respond to this communication.

It is the defendant's contention that plaintiff has failed to avail himself of remedies and procedures available to him at the administrative level. They allege specifically that he has neglected to take at least two repeat examinations for which he was eligible, and that he has allowed more than two years to go by before seeking the legal redress now before this Court. They state he is not entitled to the extraordinary writ of mandamus or superintending control, and ask that the complaint be dismissed. They invoke the equitable defense of laches and point out that while there is no statutory limitation respecting the institution of an action, courts will apply one by analogy.

Complicating the matter before this Court is the fact revealed upon oral argument that plaintiff's examination papers have been destroyed in the normal course of office procedure, obviating the possibility of further consideration of his answer to the design problem.

· This Court, lacking the training of an architect or engineer, finds itself in the position that a review here of plaintiff's examination papers would be of no avail. The allegations that defendant has acted arbitrarily and improperly are not borne out by the individual scores cited, *supra*. Indeed, there was no member of the scoring panel who considered plaintiff's answer satisfactory.

The legislature has vested defendant with the duty of prescribing the scope of the examinations for the profession under consideration.[1]

For a fuller understanding of the problem before this Court, we reproduce in full the examination question which proved to be plaintiff's nemesis.

"MICHIGAN STATE BOARD OF REGISTRATION FOR ARCHITECTS, PROFESSIONAL ENGINEERS, LAND SURVEYORS.

ARCHITECTURAL EXAMINATION.

*Part 3    Design Problem.*

*"Wednesday—June 12, 1963
All day—8:00 A.M.—(12 Hours)*
Candidates will put title block in lower *right hand* corner with the following information:
(a) Identification number   (b) June 12, 1963   (c) 'A University Theater'   (d) Location

*No Books of Reference Permitted.*

"The objective of this examination is to test the candidate's understanding of the principles of architectural design in the widest meaning of that term and his skill in applying them to a specified problem, such as he might meet in practice.

---

[1] See CL 1948, § 338.551 *et seq.*, as amended (Stat Ann 1957 Rev § 18.84[1] *et seq.*, as amended).—REPORTER.

"Subject: *A University Theater.*

"*General:* At a university located in central Michigan, it is planned to erect a theater for the educational program in speech and the dramatic arts. The theater will serve the university community, and the actors, staff, and audience will be comprised of faculty and students. An open-stage type theater, in which the audience faces the performing area from three adjacent sides, has been selected as the most versatile type for teaching purposes. Plays planned for proscenium or theater-in-the-round productions will be adjusted to suit the open-stage. No grid or overhead facilities for hanging are planned, and all seats will be fixed.

"*Site:* The building site, generally level and rectangular, measures 300 feet along the south side of a main campus drive, and 200 feet along campus walks bordering it on the east and west. To the south of the site are various other academic buildings three storeys in height, for the most part. North of the main campus drive are dormitories and recreational facilities, plus parking accommodations adequate for the theater-goers.

"*Building:* Facilities are to be provided for as follows, with deviations limited to 10%, plus or minus, for the areas noted.

"1. *Production facilities*
    a. Work Shop (2-storeys high): 2,000 sq. ft.
    b. Costume and Scene Design: 750 sq. ft.
    c. Storage for materials and properties: 750 sq. ft.
    d. Loading dock: 250 sq. ft.
    e. Lighting Gallery (in truss plenum): 800 sq. ft.

"2. *Performers' Facilities*
    a. Open-stage: 1,000 sq. ft.
    b. Back stage (2-storeys high): 3,000 sq. ft.
    c. Rehearsal room: 2,000 sq. ft.

d. Dressing rooms and toilets, men and women:
1,000 sq. ft. each
e. Costume storage: 800 sq. ft.

"3. *Viewers' Facilities*
a. Foyer, with ticket counter: 1,500 sq. ft.
b. Lobby: 2,500 sq. ft.
c. Coat and Toilet Rooms, total: 600 sq. ft.
d. Auditorium for 600 seats: 6,000 sq. ft.

"4. *Teaching Facilities*
a. Classrooms, four (4) at 500 sq. ft. each:
2,000 sq. ft.
b. Offices, eight (8) at 200 sq. ft. each: 1,600
sq. ft.
c. Library and office: 1,600 sq. ft.

"5. *Service Facilities*
a. Mechanical equipment (Space as required,
may be in basement)
b. Custodial (as required, may be in basement)
c. On-site parking: six cars

"*Drawings required:* All drawings are to be done
on a *single sheet* of heavy white tracing paper
24″ x 30″, to be presented horizontally. Some fur-
nishings and equipment may be shown to indicate
the use of spaces, but all spaces shall be iden-
tified as per the building requirements. In orienting
the plan drawings on the sheet, north should be at
the top.

"1. Site plan, indicating general development and
landscaping, at the scale of 1″=32′-0″;

"2. Floor plans (basement may be omitted if pro-
viding for service facilities only) at the scale of
1″=16′-0″;

"3. Rendered perspective, showing one of the major
elevations of the building, measuring approximately
10″ x 20″;

"4. Cross-section at the scale of 1″=16′-0″;

"5. Detail of typical wall section, indicating materials and framing system, at the scale of 3/4″= 1′-0″."

It is impossible for this Court to say that such a question is incapable of proper interpretation or of proper grading. Further, we cannot hold that the board has arbitrarily exceeded its powers in requiring a passing answer to such a question. Courts will not interfere with the right of an administrative agency to adopt rules and regulations to effectuate the purposes of the legislation creating it unless there is an obvious abuse of discretion, which we do not find here. *Coffman* v. *State Board of Examiners in Optometry* (1951), 331 Mich 582.

While an objective examination in any of the arts, sciences or professions might be easier to grade, and provide a more black-and-white delineation between passing and failing, many areas are not susceptible of such procedures and it is not in the province of this Court to order an examinee certified when in the judgment of the certifying board his performance does not meet the standard of the profession. Nor can any court sit as a superexamining board.

The quesion of the constitutionality of the composition of defendant board raised during oral argument is not dealt with in this opinion in that it is inconsistent with the relief asked for in plaintiff's complaint. If plaintiff questions the right of defendant board to perform its functions, his proper procedure would be an action for *quo warranto.*[2] The original issue in this case must stand by itself and may not be obfuscated by first asking that a board be compelled to do something and then challenging the board's constitutionality and power to do that which is asked.

---

[2] See GCR 1963, 715.—REPORTER.

Plaintiff's complaint for a writ of mandamus or superintending control is dismissed.

No costs, a public question being involved.


J. H. GILLIS, P. J. (*concurring*). I reluctantly concur in the results because I believe that we cannot sit as a superexamining board and order the defendant to issue a license to the plaintiff. The defendant has failed to establish adequate standards, has delegated its function of grading examinations to unauthorized personnel and has not made an independent determination on the question of whether the applicant has scored a passing grade on the examination. Defendant neglected to advise plaintiff why he did not obtain a passing grade on the design problem and has refused to provide any method of review for an applicant considered by defendant to be lacking in the professional skills of an architect.

To further complicate matters, the defendant, as pointed out in Judge FITZGERALD's opinion, has destroyed plaintiff's examination papers.

The final argument of the defendant to the effect that the plaintiff does have a method of review by repeating the biannual examination has no merit and deserves no answer.